UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>JOHN BRDA and GEORGIOS PALIKARAS,<br><br>　　　　　　　　　　Defendants. | No. 1:24-cv-004806 (KPF)(OTW) |

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANT GEORGIOS PALIKARAS'S MOTION TO TRANSFER VENUE**

HOLLAND & KNIGHT LLP
787 Seventh Avenue
New York, New York 10019
*Counsel for Defendant Georgios Palikaras*

Pursuant to 28 U.S.C. §1404(a), Defendant Georgios Palikaras ("**Palikaras**") files this memorandum joining in, adopting, and incorporating by reference Defendant John Brda's ("**Brda**") reply memorandum of law (ECF No. 34) in further support of Defendants' Motions to Transfer Venue (the "**Motions to Transfer**") (ECF Nos. 18, 23) for the convenience of the parties and witnesses and in the interest of justice (the "**Reply**").

## PRELIMINARY STATEMENT

In its Opposition to Defendants' Motions to Transfer (the "**Opposition**") (ECF No. 32), the Security and Exchange Commission (the "**SEC**") attempts to "decentralize" this case and place any operative fact it can in, or near, the Southern District of New York. The allegations in the Complaint center on:

- the merger of Metamaterials, Inc., and Torchlight Energy Resources, Inc. ("**Torchlight**"), a company headquartered in the Eastern District of Texas;

- whose employees and members of its board of directors are located in Texas;

- purported misrepresentations or omissions in public statements and filings about Torchlight and disseminating from its Plano, Texas headquarters related to the details, purpose, and effect of the merger; and

- the salient facts of which must be gleaned from an investigative file maintained by the SEC's Fort Worth office and material witnesses located in and near the Eastern District of Texas.

The Court should not retain this case merely because Torchlight securities traded on Nasdaq, one identified witness is located in this District, and the attorneys in the SEC Fort Worth office – which frequently files cases in the Eastern District of Texas – have decided that a short drive to the Eastern District of Texas is somehow less convenient than lengthy flights and hotel stays will be not only for themselves and lead counsel for both Defendants but also for material witnesses located in Texas.

## ARGUMENT

1

Because the balance of factors warrants transfer of this case to the Eastern District of Texas, Defendants' Motions to Transfer should be granted.

**A.    CONVENIENCE OF THE WITNESSES FAVORS TRANSFER BECAUSE THE MAJORITY OF MATERIAL WITNESSES RESIDE IN TEXAS**

"When assessing the convenience of witnesses, a court does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum."[1] *Herbert Ltd. P'ship v. Electronic Arts Inc.*, 325 F. Supp. 2d 282, 286 (S.D.N.Y. 2004). Instead, courts examine "the materiality, nature, and quality of each witness." *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 404 (S.D.N.Y. 2005). "[O]nly the material witnesses are afforded substantial weight in the balancing calculus." *Id.*

The SEC specifically identifies **one material witness** in New York, a former board member who also served as Chairman of Torchlight's Audit Committee. *See* Brda Reply at 6. However, this person is not alleged to have any first-hand knowledge of the allegations in the Complaint, and his position overseeing the company's financial statements is of no moment—the SEC does not allege any accounting or audit-based violations in this case. *See* Brda Reply at 3.

On the other hand, the SEC agrees that a number of witnesses with relevant knowledge of material facts are located in Texas, including two of Torchlight's four board members. *See* Opp. at 14; Declaration of Ty S. Martinez (the "**Martinez Decl.**") (ECF No. 33), ¶ 20. However, the SEC gives short shrift to the fact that one of those individuals is Torchlight's former Board Chairman, a key witness with material knowledge of the facts as evidenced by the SEC's own

---

[1] The SEC faults Defendants for not identifying by name other employees, citing case law that Defendants are "obliged" to name witnesses who will be appearing. Opp. at 12-13. But courts have nevertheless found this factor to favor transfer "even absent a list of witness" where it is clear that "a substantial portion of the witnesses are located in the transferee district." *In re Energy Transfer Sec. Litig.*, 22 Civ. 4614, 2022 WL 17477854, at *3 (S.D.N.Y. Nov. 7, 2022).

2

references to him in its Complaint.[2]  *See* Complaint ¶¶ 32, 78; *see also* Brda Reply at 7; Brda Supp. Decl. ¶ 3.  In addition, the SEC concedes that Torchlight's former CFO resides in, and worked from, the Eastern District of Texas, where he was involved in, and thus is knowledgeable about, operative facts, as discussed *infra*.  *See* Brda Reply at 7; Martinez Decl. at ¶ 24.

Seeking to minimize the Texas nexus and practical value in transferring this case to its Eastern District, the SEC also vaguely refers to other potential witnesses "located in multiple different places across North America."  Opp. at 5.  But courts in this district routinely dismiss as "irrelevant" these "allusions to other named witnesses located outside of both the current forum and the transferee forum."  *In re Energy Transfer Sec. Litig.*, 2022 WL 17477854, at *3; *see, e.g.*, *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d at 288 ("The convenience of witnesses who reside in neither the current nor the transferee forum is irrelevant when considering a motion to transfer."); *NBA Properties, Inc. v. Salvino, Inc.*, No. 99 CIV. 11799 AGS, 2000 WL 323257, at *6 (S.D.N.Y. Mar. 27, 2000) (finding the convenience of certain witnesses to be "irrelevant because the witnesses are located outside of both the current and transferee forums").

And the SEC goes too far by attempting to wrangle other potential witnesses into this District by pointing to inadmissible allegations from other—now dismissed—litigation.  Specifically, the SEC provides a Declaration from one of its Senior Accountants who suggests—without identifying any personal knowledge himself—that three individuals in New York, New

---

[2] Torchlight's Form 10-K says the following of this witness: "Mr. McCabe has been a member of our Board of Directors since July 2016 and was appointed Chairman of the Board in October 2016. He is an experienced geologist who brings over 36 years of oil and gas experience to our company. He is a principal of numerous oil and gas focused entities including McCabe Petroleum Corporation, Manix Royalty, Masterson Royalty Fund and GMc Exploration. He has been the President of McCabe Petroleum Corporation from 1986 to the present. Mr. McCabe has been involved in numerous oil and gas ventures throughout his career and has a vast experience in technical evaluation, operations and acquisitions and divestitures. Mr. McCabe is also our largest stockholder and provided entry for us into our two largest assets, the Hazel Project in the Midland Basin and the Orogrande Project in Hudspeth County, Texas. We believe that Mr. McCabe's background in geology and his many years in the oil and gas industry compliments the Board of Directors." *See* Martinez Decl. ¶¶ 13, 21, Ex. 4 (Torchlight 2020 Form 10-K), at 7.

Jersey, and Massachusetts might have invested in Torchlight on unspecified dates in June 2021. Martinez Dec. ¶ 33. Such *ipse dixit* should be given no weight, as allegations from another lawsuit are just that—unproven claims that are not themselves evidence and, though the SEC omits to inform this Court, that case was dismissed nearly a year ago when the district court determined that, even after amendment, plaintiffs failed to state any cognizable claim.[3]

**B.     It IS BEYOND REASONABLE DISPUTE THAT TEXAS IS THE LOCUS OF OPERATIVE FACTS**

The SEC fails to show that the key operative facts have any material connection to New York, pointing out only that the Nasdaq securities exchange is headquartered here and alleged and unproven misstatements may have electronically reached some individuals in New York (over Twitter or other virtual communications distributed widely, not specifically to this locale). But the location of the exchange's headquarters in this District is incidental to the actual facts at issue and has no bearing on the veracity of the SEC's allegations, as already agreed by other courts to consider the issue. *See* Brda Reply at 2 n.1 (collecting cases). Even assuming for the sake of argument that some investors in or near New York were impacted by the alleged scheme, this alone does not outweigh the overwhelming reasons why this case is more appropriately litigated in the Eastern District of Texas.

No court in the Second Circuit has ever held that the locus of operative facts in a securities fraud case depends on where the impact of the alleged fraud occurred. Instead, "[m]isrepresentations and omissions are deemed to 'occur' in the district where they are transmitted or withheld, not where they are received." *Bent v. Zounds Hearing Franchising, LLC*, No. 15 Civ. 6555, 2016 WL 153092, at *5 (S.D.N.Y. Jan. 12, 2016). Here, the SEC does not allege that any misrepresentations were disseminated from New York; rather, the relevant conduct

---

[3] *See In re Meta Materials Inc. Sec. Litig.*, No. 21-cv-7203, 2023 WL 6385563, at *1 (E.D.N.Y. Sept. 29, 2023).

occurred in and around the Eastern District of Texas, where Torchlight's headquarters, assets, and employees were (and some still are) located. *See* Brda Reply at 5.

    i.   *The SEC's Evidence Establishes Torchlight's Business Was Texas-Centric, as Were the Oil and Gas Assets on Which the SEC Bases Certain Claims.*

The SEC glosses over the nature of Torchlight's Texas-centered business even though it complains about handling of that company's oil and gas assets. *See* Compl. ¶¶ 25-27, 41-42, 45, 67-78, 88, 98, 102. For instance, in its Opposition, the SEC provides a copy of Torchlight's Form 10-K for 2020, but omits clear statements within it tying this case to the Eastern District of Texas:

- "We are an energy company engaged in the acquisition, exploration, exploitation and/or development of oil and natural gas properties in the United States. We are primarily focused on the acquisition of early-stage projects, the development and delineation of these projects, and then the monetization of those assets once these activities are completed."

- "Since 2010, our **primary focus** has been the development of interests in oil and gas projects we hold in the Permian Basin in West **Texas**. Presently, our primary interests include the Orogrande Project in Hudspeth County, **Texas** and the Hazel Project in the Midland Basin. In November 2020, we sold our interest in the project in Winkler County, **Texas**."

- "We operate our business through our wholly owned subsidiaries, including Torchlight Energy, Inc., a Nevada corporation, ("TEI"), Hudspeth Oil Corporation, a **Texas** corporation, ("Hudspeth"), and Torchlight Hazel, LLC, a **Texas** limited liability company."

- "Current Projects. As of December 31, 2020, we had interests in three oil and gas projects: the Orogrande Project in Hudspeth County, **Texas**, the Hazel Project in Sterling, Tom Green, and Irion Counties, **Texas**, and the Hunton wells in partnership with Kodiak in Central Oklahoma."

*See* Martinez Decl. ¶¶ 13, 21, Ex. 4 (Torchlight 2020 Form 10-K), at 5-6

    ii.   *The SEC's Evidence Also Establishes That SEC Filings, Stock Issuances and Related Records, Proxy Solicitations, and Relevant Presentation Materials Were Prepared in Texas and Underlying Facts Are Known by a Key Witness in the Eastern District of Texas.*

The SEC also acknowledges that Torchlight's former CFO resides and worked in the Eastern District of Texas, and it cites to and attaches select excerpts of his sworn testimony in which he established that:

5

- his work in Plano involved "overseeing everything in the office, located in Texas;"
- that "the accounting was located and all of our auditor relationships were in Texas."
- He prepared initial drafts of Forms 10-Q and 10-K (among the documents upon which the SEC bases its claims);
- he oversaw another employee who, under his supervision, maintained records relating to investments and issuances of stock and communicated with the Torchlight transfer agent (at the core of the SEC's alleged stock manipulation scheme in this case); and
- he "provid[ed] financial information or financial statements that might've supported those presentation materials" (which materials and presentations the SEC has alleged were misleading).

*See* Martinez Decl. ¶ 24, Ex. 5 at 6, 24, 26-28, 41.

Further, the SEC asserts claims based on Torchlight's proxy statements and solicitation of proxies to complete the merger (*see* Compl. ¶¶ 6, 31, 34, 39, 43), though a plain reading of the SEC's Complaint and the Definitive and Preliminary Proxy Statements makes clear that proxies were solicited by the board from Torchlight's headquarters: 5700 W. Plano Parkway, Suite 3600, Plano, Texas 75093. *See* Brda Reply at 5.

    iii.    *The SEC's arguments for why New York is a proper venue are tenuous and have been rejected by case law.*

There is a clear nexus to Texas and a strong basis to transfer this matter to its Eastern District, and the SEC's effort to recast the case as based on alleged "virtual" and "decentralized" facts in order to remain in this District is unavailing. *See* Opp. at 1, 15. Notably, the SEC's alleged relevant period at issue is "early 2020" (Complaint ¶ 2) through the June 2021 merger, a time when much of the world was operating virtually due to COVID, including the SEC's own staff. Hence, that Defendants and Torchlight may too have been operating virtually is unsurprising, not relevant to a venue determination, and the SEC cannot ignore that salient fact in an attempt to anchor this matter in a District with no intimate connection to the parties or the facts.

In a similar effort to reframe the facts as broadly decentralized rather than centered in and around the Eastern District of Texas, the SEC changes the story alleged in its Complaint—in

6

opposing venue transfer, the SEC argues that "Defendants" (*i.e.*, *both* Brda and Palikaras) furthered the alleged scheme through consultants located hither and yon (*see* Opp. at 4, 11, 16), but the Complaint alleges only that Brda hired consultants to market the supposed short squeeze narrative of the Preferred Dividend and that he "conceal[ed]" these payments by causing Torchlight to keep inadequate books and records. Complaint ¶¶ 56-58.

The SEC also insists that alleged misstatements reached some individuals in and near New York via Twitter and other virtual means. *See* Opp. at 14. But the fact that some investors in or near New York were impacted by Defendants' alleged scheme does not tip the scale in favor of the Southern District of New York as the proper venue for this case. *See* Brda Reply at 3, n.2. As noted above, no court in the Second Circuit has held that the locus of operative facts in a securities fraud case depends on where (much less one of possibly many places where) the impact of the fraud took place. "[I]n securities fraud actions misrepresentations and omissions are deemed to occur in the district where they are transmitted or withheld, not where they are received." *Woldanski v. TuSimple Holdings, Inc.*, No. 22 CIV. 9625, 2023 WL 1795191, at *4 (S.D.N.Y. Feb. 7, 2023) (citation and internal quotation omitted) (finding locus of operative facts in California where the documents and statements were issued from the company's headquarters in California); s*ee also Erickson v. Corinthian Colleges, Inc.*, No. 13 Civ. 4308, 2013 WL 5493162, at *3 (S.D.N.Y. Oct. 1, 2013) ("[I]n cases where, as here, the plaintiff alleges that certain documents contained false or misleading statements, the key witnesses are frequently officers and employees of [the issuer] who participated in drafting or distributing [those] statements.") (internal citations and quotations omitted); *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 404 (S.D.N.Y. 1998) ("[T]hat the shares were directed to New York does not make it a forum which has a significant contact with the operative facts"); *IBJ Schroder Bank & Trust Co. v. Mellon Bank,*

*N.A.*, 730 F. Supp. 1278, 1281 (S.D.N.Y. 1990) (finding transfer appropriate where misleading documents issued by defendant were prepared in transferee forum).

### C. THE EASTERN DISTRICT OF TEXAS IS CAPABLY SUITED TO OVERSEE THIS ACTION AND WILL BE MORE CONVENIENT FOR THE PARTIES AND WITNESSES

"Federal courts throughout the nation are equally capable of applying federal securities laws." *Truk Int'l Fund, LP v. Wehlmann*, No. 08 Civ. 8462, 2009 WL 1456650, at *7 (S.D.N.Y. May 20, 2009); *see also City of Pontiac Gen. Emps. Ret. Sys. v. Dell Inc.,* No. 14-CV-3644, 2015 WL 12659925, at *7 n.8 (S.D.N.Y. Apr. 30, 2015) (fact that SDNY is "central in many securities actions" is "not meant to imply that this District has more familiarity with governing securities law than other federal district court"). The Eastern District of Texas is just as capable of interpreting and applying the federal securities laws as is this court, as demonstrated by the many other SEC enforcement actions that have come before it. *See infra,* n.4 (collecting recent cases).

In addition, all SEC lawyers litigating this case are based in Texas and sought admission here *pro hac vice*; there is not one New York-based SEC lawyer on this case. As shown above, material witnesses and relevant documents are also located in Texas more than in New York. Each of Defendants' lead litigation counsel is also located in Texas. Despite all this, the SEC contends it will be more convenient to litigate in this District because the SEC's New York office is "within walking distance" to the courthouse and gives the SEC "convenient access" to resources—albeit after incurring the time and expense of securing travel to, and lodging in, New York. Opp. at 9; *see also* Martinez Decl. ¶ 3 (noting the New York office is the SEC's "second largest office").

8

The SEC—and specifically its Fort Worth Office handling the instant case—regularly file cases in the Eastern District of Texas,[4] including one just this year against the former CEO of a Nasdaq-listed public company headquartered in that District but not named in the lawsuit. *See SEC v. Blount*, Docket No. 4:24-cv-00375 (E.D. Tex. Apr 30, 2024).[5] And in 2017, a team from the SEC's Fort Worth Office conducted a full jury trial in the Eastern District of Texas, demonstrating its ability to transport staff and file materials to that court and to become and remain fully trial ready there. *See SEC v. Mapp, III et al*, Docket No. 4:16-cv-00246 (E.D. Tex. Apr. 11, 2016) (with jury trial taking place December 4 through December 12, 2017). To be sure, the Eastern District of Texas is a familiar forum for the SEC and its Fort Worth staff, notwithstanding the fact that the agency has never maintained an office there.[6]

In sum, although district courts give due deference to the plaintiff's choice of forum, "this weight changes when the operative facts have few meaningful connections to the plaintiff's chosen forum." *AGCS Marine Ins. Co.*, 775 F. Supp. 2d 640, 649 (S.D.N.Y. 2011); *see also Mitsui Marine & Fire Ins. Co. Ltd. v. Nankai Travel Int'l Co., Inc.,* 245 F. Supp. 2d 523, 525 (S.D.N.Y. 2003) (granting transfer to a district where the majority of the material witnesses were located and the

---

[4] *See, e.g.*, *SEC v. Krishnan et al*, Docket No. 4:24-mc-00095 (E.D. Tex. Jul 01, 2024); *SEC v. Intrusion Inc.*, Docket No. 4:23-cv-00859 (E.D. Tex. Sep 26, 2023); *SEC v. Blount*, Docket No. 4:24-cv-00375 (E.D. Tex. Apr 30, 2024); *SEC v. Holts*, Docket No. 1:23-cv-00081 (E.D. Tex. Feb 27, 2023); *SEC v. Reliable One Resources, Inc. et al*, Docket No. 6:23- cv-00006 (E.D. Tex. Jan 06, 2023); *SEC v. Burroughs et al*, Docket No. 4:21-cv-00994 (E.D. Tex. Dec 27, 2021) ; *SEC v. v. Moss, Jr. et al,* Docket No. 4:20-cv-00972 (E.D. Tex. Dec 23, 2020); *SEC v. Nerren*, Docket No. 4:20-cv-00965 (E.D. Tex. Dec 21, 2020); *SEC v. Silea et al,* Docket No. 4:20-cv-00737 (E.D. Tex. Sep 29, 2020); *SEC v. Carter et al*, Docket No. 4:19-cv-00100 (E.D. Tex. Feb 07, 2019); *SEC v. AmeraTex Energy, Inc*. et al, Docket No. 4:18-cv- 00129 (E.D. Tex. Feb 27, 2018); *SEC v. Bryant et al*, Docket No. 4:17-cv-00336 (E.D. Tex. May 15, 2017); *SEC  v. Fox et al,* Docket No. 4:17-cv-00271 (E.D. Tex. Apr. 19, 2017); *SEC v. Griffin et al*, Docket No. 4:16-cv-00902 (E.D. Tex. Nov 23, 2016); *SEC v. v. Tycoon Energy, Inc. et al,* Docket No. 4:16-cv-00693 (E.D. Tex. Sep 09, 2016); *SEC v. Mapp,* III et al, Docket No. 4:16-cv-00246 (E.D. Tex. Apr 11, 2016).
[5] This was a settled action, following a prior-filed case against the entity. Here, the SEC also sued the entity in a settled Administrative Proceeding filed June 25, 2024. *See* https://www.sec.gov/files/litigation/admin/2024/33-11292.pdf.
[6] The SEC conducts business from its "Home Office" in Washington D.C. and eleven Regional Offices located around the country. See SEC webpage at https://www.sec.gov/about/regional-offices. The Fort Worth regional office "primarily conducts its enforcement or examination activities in Arkansas, Kansas, Oklahoma, and Texas." https://www.sec.gov/about/sec-regional-offices/fort-worth-regional-office

locus of operative facts was centered). Here, because the operative facts, material witnesses, relevant documents, and all litigating counsel are located in and around the Eastern District of Texas, venue should be transferred there.

## **CONCLUSION**

For these reasons, Palikaras respectfully requests that the Court transfer this action to the Eastern District of Texas.

Dated: Dallas, Texas
       September 11, 2024

Respectfully submitted,

HOLLAND & KNIGHT LLP

*/s/ Jessica B. Magee*
Jessica B. Magee, Esq. *(pro hac vice)*
One Arts Plaza, 1722 Routh Street, Suite 1500
Dallas, Texas 75201
Tel: (214) 964-9500
Jessica.Magee@hklaw.com

Kayla A. Joyce
787 Seventh Avenue, 31st Floor
New York, NY 10019
Tel: (212) 513-3200
Kayla.Joyce@hklaw.com

*Attorneys for Georgios Palikaras*